**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON**

**CIVIL ACTION NO. 2:20-CV-00153 (WOB-CJS)**

**MICHELLE GILLILAND**                                                          **PLAINTIFF**

**VS.**                          **MEMORANDUM OPINION AND ORDER**

**MAYSVILLE OPERATIONS, LLC.**                                      **DEFENDANT.**


Plaintiff Michelle Gilliland filed a wrongful discharge suit against her former employer, Maysville Operations, LLC.  In her amended complaint, she alleges that Maysville Operations terminated her because she reported a violation of the federal Health Insurance Portability and Accountability Act (HIPAA). (Doc. 7). In response to Gilliland's allegations, Maysville Operations moved to dismiss the action, arguing Gilliland failed to state a valid claim for wrongful discharge. (Doc. 8).

The Court previously heard oral argument and took the motion under submission. (Doc. 13). Having carefully reviewed the record, the Court now issues the following Memorandum Opinion and Order.

### *Factual and Procedural Background*

Maysville Operations is a senior care center in Kentucky. (Doc. 8 at 2).  It employed Gilliland as its Director of Nursing.  In June 2020, Gilliland found out about a breach of patient confidentiality by the Center's Regional Director and her daughter.  (Doc. 9 at 2).  The staff learned that a Maysville Operations employee who was "not responsible for providing care" to residents accessed a resident's medical records and informed the Unit Coordinator of a medical issue

reflected in those records. (Doc. 8 at 2). And third parties, not employed by Maysville Operations, may have been present or overheard this discussion. *Id*.

Staff members alerted Gilliland of the alleged violation, who in turn reported the incident to Robert Hollins, the Vice President of Clinic Operations. *Id*. Hollins dismissed Gilliland's concerns, stating he did not believe the conduct arose to a HIPAA violation. *Id*. Shortly after that conversation, Maysville Operations terminated Gilliland. Gilliland contends her termination was in retaliation for reporting an alleged HIPAA violation. *Id*. Because of this, she filed a complaint alleging wrongful discharge. *Id*.

### *Standard of Review*

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Additionally, FRCP 12(b)(6) allows a party to move to dismiss a complaint because it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012).

Even so, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

## *Analysis*

Kentucky follows the employment at will doctrine, which provides that an employer may discharge an at will employee for "good cause, for no cause, or for a cause that some might view as morally indefensible." *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 731 (Ky. 1983) (citation omitted). In *Firestone*, the Kentucky Supreme Court also recognized a narrow exception to this rule—when the discharge from employment contradicts a fundamental and well-defined public policy as reflected by existing constitutional or statutory law. *Id.* at 731. Two years later, the Kentucky Supreme Court expanded this exception to include instances in which the alleged reason for the discharge from employment was: (1) the refusal to violate the law; or (2) the employee's exercise of a statutorily conferred right. *Grzyb v. Evans*, 700 S.W.2d 399, 402 (Ky. 1985).

Here, there is neither a basis in Kentucky law for a wrongful discharge claim, nor a well-defined public policy making it appropriate for Gilliland to pursue an action against Maysville Operations. Kentucky courts have held that an employee cannot rely on HIPAA as a basis for a

wrongful discharge claim, since HIPAA's confidentiality provisions protect patients and not healthcare employees. *Hereford v. Norton Healthcare, Inc.,* 2015-CA-001958-MR, 2017 WL 3129194, at *2 (Ky. App. July 21, 2017); *See generally, Shrout v. TFE Group*, 161 S.W.3d 351, 355 (Ky. App. 2005) ("[T]he public policy must be defined by statute and must be directed at providing statutory protection *to the worker* in his employment situation.") (emphasis added). This alone is enough for the Court to grant Maysville Operation's motion to dismiss.

Gilliland, however, argues in her complaint and response that KRS 216.515 protects her from wrongful discharge. This is inaccurate. KRS 216.515(7) provides, "[a]ll *residents* shall have confidential treatment of their medical and personal records. Each resident or his responsible family member or his guardian shall approve or refuse the release of such records to any individuals outside the facility, except as otherwise specified by statute or administrative regulation." (emphasis added). The statute guarantees the rights of residents—not employees. The public policy surrounding KRS 216.515 is to ensure confidentiality of patient records, not the protection of an employee from wrongful discharge.

Even if this Court were convinced KRS 216.515 protected Gilliland, KRS 216.515(26) supplies the remedy for a violation. It explicitly states,

> Any resident whose rights as specified in this section are deprived or infringed upon shall have a cause of action against any facility responsible for the violation. *The action may be brought by the resident or his guardian.* The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for any deprivation or infringement on the rights of a resident.

KRS 216.515. (emphasis added). This statute proves Gilliland is not of a member of the class for which the law protects. But even if she were, the statute already enumerates any prospective remedy.

Gilliland's best argument lies within KRS 216.541—but even this point is futile. According to this statute, "[r]etaliation and reprisals by a long-term-care facility or other entity against any employee or resident for having filed a complaint or having provided information to the long-term care ombudsman shall be unlawful." KRS 216.541(2). Gilliland argues that since she was terminated before she could file a report to the ombudsman, this Court should not preclude her cause of action because the statute does not require her to report only to the ombudsman. Yet the public policy surrounding KRS 216.541, titled "Willful interference with representative of Office of the Long-Term-Care Ombudsman prohibited; retaliation against complainant prohibited; penalty; liability insurance for representatives of the ombudsman program", is to prevent interference with representatives of the long-term care ombudsman.

Even if this Court found Gilliland to be a protected individual, this case must still be dismissed because a remedy is available to Gilliland. KRS 216.541(3) provides for a civil remedy of $100 to $500 for each violation, and each day is a separate violation.

Gilliland's claims cannot stand under Kentucky law. She cannot show the action for wrongful discharge was contrary to public policy evidenced by a constitutional and statutory provision or that the discharge directly related to her refusal to violate the law during her employment. *Firestone*, 666 S.W.2d at 733. What's more, if a statute protects the employee, she must satisfy the exceptions laid out in *Grzyb.* 700 S.W.2d at 402. Since she did not show: (1) her refusal to accede to a demand from Maysville Operations that she violated the law; or (2) that she exercised a statutorily conferred right related to her employment under *Grzyb*, this Court dismisses her action.

Therefore, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that: (1) Maysville Operation's motion to dismiss (Doc. 8) be, and is hereby, **GRANTED**.  A separate judgment shall enter concurrently herewith.

This 21st day of June 2021.



Signed By:

_**William O. Bertelsman**_ WOB

**United States District Judge**